CARPENTERS & JOINERS LOCAL UNION, etc., et al. v. GARMES et al.

No. 32897.   Nov. 18, 1947.

*186 P. 2d 836.*

Robert N. Woodard, of Oklahoma City, for petitioners.

Joe A. Smalley, of Norman, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM.   This is an original proceeding brought in this court by Carpenters & Joiners Local Union No. 1060 of Norman, Okla., hereinafter referred to as Union, and Accident & Casualty Insurance Company, petitioners, to review an award of the State Industrial Commission awarding compensation to respondent, George H. Garmes.

Respondent in due time filed his first notice of injury and claim for compensation wherein he stated that on May 16, 1946, while in the employ of petitioner Union and while engaged in working as a carpenter in the construction of a building, he sustained an accidental injury consisting of the loss of three fingers, lacerations to both legs and other portions of his body, resulting in permanent disability.

The trial commissioner before whom the case was tried found that on the 16th day of May, 1946, respondent, while in the employ of petitioner Union, sustained an accidental personal injury arising out of and in the course of his employment consisting of an injury to his right hand and awarded compensation.

It is the contention of petitioners that the evidence shows respondent at the time he sustained his injury was not employed to perform work in an occupation defined as hazardous by the Workmen's Compensation Act carried on by his employer for pecuniary gain and that the commission was therefore without jurisdiction to award him compensation.   We think this contention well taken.   The evidence shows that petitioner Union constitutes a non-profit labor organization, was organized for the mutual benefit and advantage of its members and to promote better working conditions; that it was

the owner of some vacant lots in the city of Norman; that it decided to and later did erect a building upon such lots. The building consisted of a one story building and was constructed in three different compartments, two of which were rented, one later being occupied by a grocery store, one by a cafe and the other by the Union as a meeting place. Respondent testified that the building consisted of three structures; that is, there were three separate compartments, but all three compartments were covered by a single roof, but that there were three separate cantilever arches supporting the roof over each compartment; that it was while working on the compartment now occupied by the grocery store that he received the injury stated in his claim; that the building was constructed primarily to afford a meeting place for the Union.

The evidence further shows that this was the only building the Union had ever constructed; that it was not regularly engaged in the business of constructing buildings for others for pecuniary gain. It is further shown that it was necessary for the Union to borrow money for the purpose of constructing the building and that the proceeds derived from the rental are being used to retire this loan.

While the evidence shows that respondent at the time he sustained his injury was employed by the Union to perform work on the construction of a building, an employment broadly defined as hazardous by the Workmen's Compensation Act, 85 O.S. 1941 §2, such employment, however, only becomes hazardous under section 3, subd. 5, when carried on by the employer for pecuniary gain. Since the evidence in this case fails to show that the Union employer of respondent was engaged in the construction of buildings for pecuniary gain, the commission was without authority to award him compensation. Respondent, however, refers to the evidence showing that the employer Union before the building was completed rented two compartments thereof for commercial purposes and now contends that such evidence constitutes evidence sufficient to show that it was engaged in the business of constructing buildings for pecuniary gain. We have held to the contrary. In the case of Blakely v. Hamby, 187 Okla. 251, 102 P. 2d 581, we said:

"Where an employer is engaged in a nonhazardous business and employs some one to perform labor for him of a hazardous nature as an incident to such nonhazardous business, but not in the conduct of same for pecuniary gain, such employee, if injured, does not come within the provisions of the Workmen's Compensation Act, for subsection 5 of section 13350, O. S. 1931 (85 O.S. 1941 §3, subd. 5) provides ' "Employment" includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain'."

In that case the employer was engaged in the operation of a real estate and rental business. He employed a workman to repair and paint one of the rental houses owned by him; while engaged in such employment the workman sustained an accidental injury and filed a claim for compensation. We held that the employer in repairing and painting his rental house was not engaged in a business defined as hazardous under the Workmen's Compensation Act for pecuniary gain and sustained an order of the State Industrial Commission denying compensation. The same conclusion was reached by us under a substantially similar state of facts in the cases of Harris v. Wallace, 172 Okla. 349, 45 P. 2d 89; Standard Savings & Loan Ass'n v. Whitney, 184 Okla. 190, 86 P. 2d 298.

In support of his contention respondent relies on the case of Denbo v. Roark, 196 Okla. 386, 164 P. 2d 977. The facts in that case show that the employer was engaged in the business of writing insurance. It issued policies providing that in case of damage to the property insured the insurer might elect to rebuild or repair the damaged property in

lieu of a cash settlement. One of the business properties covered by a policy issued by it was partially destroyed by fire. It elected to and did proceed to rebuild the building and employed workmen for this purpose, one of whom while engaged in such work sustained an accidental injury. We there held that the employer insurer while engaged in rebuilding the damaged building was engaged in construction work, a work defined as hazardous by the Workmen's Compensation Act, and that the acceptance of premiums upon the issuance of such policy rendered the insurer an employer for pecuniary gain within the meaning of the Workmen's Compensation Act. Our conclusion in that case was based upon the theory that the evidence there was sufficient to show that the insurer and employer by virtue of the option contained in its policies undertook as a separate branch of its business to rebuild and repair buildings for others for pecuniary gain and was therefore engaged as to such separate branch of its business in a hazardous occupation within the meaning of the Workmen's Compensation Act. No such state of facts is shown in this case. The Union employer of respondent had at no time engaged in the business of constructing buildings for others. It at no time and in no manner had engaged in the business of constructing buildings for pecuniary gain. Respondent at the time he sustained his injury was not employed to perform work for petitioner Union in any occupation defined as hazardous by the Workmen's Compensation Act carried on by it for pecuniary gain. The commission was therefore without jurisdiction to award him compensation.

Award vacated, with directions to dismiss the claim.

RILEY, BAYLESS, CORN, GIBSON, and ARNOLD, JJ., concur. HURST, C. J., and DAVISON, V.C.J., dissent.

DAVISON, V.C.J. (dissenting). I am unable to agree with the majority of my associates and feel that I should set forth my reasons for dissenting.

The Union owned several lots upon which it built a three unit, one story building, one unit of which was for the use of the organization and the other two were for rental purposes. Before these buildings were started, the Union had entered into a contract with Mr. Uhles to construct one of these units for the purpose of housing a grocery store to be operated by Uhles, the unit to be built according to certain plans and specifications required by Uhles and for which, under the contract, the tenant was to pay a rental of $150 per month for a period of five years with an option of purchasing the building, or with an option to renew the lease for an additional five years for a rental of $175 per month. One of the units was built under contract for the purpose of housing a restaurant for an agreed monthly rental. During the process of construction of the units above referred to, an additional contract was entered into between the Union and Uhles for the construction of a warehouse to be built in the rear of the grocery unit. The claimant, Garmes, a member of the Union, was employed by the Union as a carpenter and foreman to supervise the construction work and was injured in the course of the construction of the warehouse.

The majority opinion relies on the cases of Meyer & Meyer et al. v. Davis et al., 162 Okla. 16, 18 P. 2d 869; Harris v. Wallace et al., 172 Okla. 349, 45 P. 2d 89 Standard Savings & Loan Ass'n v. Whitney et al., 184 Okla. 190, 86 P. 2d 89; Standard Savings & Loan Ass'n Okla. 192, 156 P. 2d 623; Blakely v. Hamby et al., 187 Okla. 251, 102 P. 2d 581; Central Surety & Insurance Corp. v. State Ind. Comm. et al., 180 Okla. 383, 69 P. 2d 1036, and Haas v. Ferguson et al., 184 Okla. 279, 86 P. 2d 986.

In my opinion, the cases above cited and relied on by the majority opinion are distinguishable from the case at bar. The foundation of the rule in the above cases is the fact that the hazardous work done was incidental to the nonhazardous business, "but not in the conduct of the same for pecuniary gain". In other words, the employer received no financial return as a result of the hazardous work. In the Meyer Case, supra, the funeral home was probably more attractive after being redecorated and may have been an inducement to more business, but the income from the undertaking was not thereby directly increased. In the rental property cases, above cited, the ease of securing tenants may have been increased, but the income was from the rental of the original buildings and was not directly related to the repair. In all the above-cited cases the owner was engaged in a nonhazardous business and the repairs were for the improvement and preservation of property already in existence and such work was closely connected with the nonhazardous business of the owners.

In the present case the construction of the grocery store, cafe and warehouse had no connection whatever with the primary business of the Union. These units were constructed for one purpose only—to produce an income in dollars and cents. They were being built by the employer for "pecuniary gain". Their erection directly resulted in a capital asset from which there was a monetary return, as from an investment. There was nothing to prevent the Union from engaging in construction work, and when it began the construction of the structures in question, it had departed, at least temporarily, from the real purpose of its existence, and at least temporarily stepped into the shoes of a builder, thus at the moment making part of its existence nonhazardous and another part hazardous for direct pecuniary gain.

Surely, it could not be said that if this same organization was in the process of building on these lots, for rental purpose, a building comparable to the Empire State Building, with the exception of one lodge room for its own use, that it would not come within the scope of the Workmen's Compensation Act. Yet, under the rule adopted in the majority opinion, a workman injured while employed in the construction of such a building would be denied the right to an award under the act.

The case of Denbo v. Roark et al., 196 Okla. 386, 164 P. 2d 977, is similar in many respects to the instant case. Therein, a nonprofit, co-operative insurance association became liable for a loss under one of its policies. It elected to rebuild the property rather than pay the amount of the loss. The actual monetary return or pecuniary gain received by the association because of rebuilding was the amount of the loss which it would otherwise have been required to pay. In that case this court held the association was engaged in a hazardous occupation for pecuniary gain and therefore liable to an employee injured therein. Although it would not be unquestionably determinative, it can be said that when a business is operated or a work done from which the employer is enriched in an amount that can be computed, the result is a pecuniary gain. The question to be asked is, "Will the employer receive an ascertainable monetary return directly from the product of the work?"

The above-cited case is also authority for the rule of law that an organization primarily organized to conduct a business which is not "hazardous" under the statute, may conduct itself in some capacities so that its nature of employment becomes "hazardous" as defined by the statute.

A somewhat analogous situation was before the court in the case of Lincoln Memorial University v. Sutton, 163

Tenn. 298, 43 S. W. 2d 195, wherein the university owned a water system from which it supplied water for its own use and to an adjacent municipality for a profit. A workman was injured in constructing a reservoir to be used in connection with such system. The respondent was held liable because:

"The reservoir, in the construction of which the employee was injured, was being constructed to insure the uniform delivery of water to the customers in Cumberland Gap. The sale of water was undertaken by plaintiff in error for profit; . . ."

The case followed the holding in Gamble v. Vanderbilt University et al., 138 Tenn. 616, 200 S. W. 510.

We have repeatedly held that the purpose of the Workmen's Compensation Act is to make industries bear the burden of human wreckage incident to operation. We have also uniformly held that the Workmen's Compensation Law is remedial and should receive liberal construction to accomplish the purpose intended. The majority opinion is a deviation from this principle.

I am of the opinion that the petitioner herein was engaged in construction work for pecuniary gain at the time claimant was injured and was within the purview of the Workmen's Compensation Act. I am of the opinion that the award made by the Industrial Commission should be sustained.

I therefore respectfully dissent.

I am authorized to state that Mr. Chief Justice HURST concurs in the above views.